MAGISTRATE JUDGE
SNOW
CIV-COHN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-61325

JAY BRUSSELS, an individual, on behalf of himself and all others similarly situated,

Plaintiff,

vs.

COMPLAINT-CLASS ACTION

DAVID E. NEWMAN, P.A., a Florida professional association, doing business as "David E. Newman Attorneys at Law," and DAVID E. NEWMAN, an individual,

Defendants.
_______________________________________/

## COMPLAINT FOR DAMAGES AND INCIDENTAL RELIEF

Plaintiff, Jay Brussels, an individual, on behalf of himself and all others similarly situated sues Defendants, David E. Newman, P.A., a Florida professional association, doing business as "David E. Newman Attorneys at Law," and David E. Newman, an individual, and alleges:

## I. PRELIMINARY STATEMENT

1. This is an action brought pursuant to 15 U.S.C. §1692, *et sequi*, known more commonly as the "Fair Debt Collection Practices Act" ("FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive and unfair practices.

## II. JURISDICTION

2. The jurisdiction of this Court arises under 15 U.S.C. §1692k and 28 U.S.C. §1337.



## III. ALLEGATIONS AS TO PARTIES

3. Plaintiff, Jay Brussels ("Mr. Brussels"), is *sui juris* and a resident of Broward County, Florida.

4. At all times material hereto, Defendant, David E. Newman, P.A. ("Collection Law Firm"), was a Florida professional association, doing business in Miami-Dade, Broward and Palm Beach Counties, Florida.

5. At all times material hereto, Defendant, David E. Newman ("Attorney Newman"), was *sui juris* and a resident of Miami-Dade County, Florida.

6. Defendants are or were engaged in the collection of debts from consumers using the mail and telephone. Defendants regularly attempted to collect consumer debts alleged to be due to another in Broward, Palm Beach and Miami-Dade Counties, Florida.

## IV. FACTUAL ALLEGATIONS

7. For an extended period of time, Defendants have acted as collection attorneys for various creditors, including an entity known as National Revenue Service, Inc. ("National Revenue").

8. In the course of its representation of the various creditors, including National Revenue, Defendants regularly collected or attempted to collect monies from consumers for credit cards ("Credit Card Debts") issued by Chase Manhattan Bank or its predecessors in interest ("Chase Manhattan").

9. Several years prior to the filing of the instant action, Mr. Brussels opened a credit card account for his personal and household use ("Brussels Credit Card Account") through Chase Manhattan.

10. A true and correct copy of the Cardholder Agreement ("Brussels Cardholder

Agreement") for the Brussels Credit Card Account is attached hereto and incorporated by reference as Exhibit "A."

11.  On or about August 30, 2005, Defendants sent or caused to be sent to Mr. Brussels written correspondence, known more commonly in the collection industry as a "dunning letter," for the purpose of collecting monies for a purported credit card debt with Chase Manhattan ("Collection Communication").

12.  A true and correct copy of the Collection Communication is attached hereto and incorporated by reference as Exhibit "A."

13.  Defendants through the Collection Communication stated, *inter alia*, as follows:

> If you dispute the debt in whole or part within 30 days of receipt of this letter, we will mail verification of the debt to you. Upon your written request, we will provide you with the name and address of the original creditor - should it be different from the one referenced above. If you do not dispute the debt or any part of it within 30 days, we will assume it is valid. Any information obtained from you will be used for the purpose of collecting the above referenced debt. *If you are in the military service, please advise immediately.*

(italics by Defendants).

14.  Defendants through the Collection Communication attempted to collect the sum of Four Hundred ($400.00) Dollars as and for "attorney's fees" ("Attorney Fee Claim").

15.  For an extended period of time prior to the filing of the instant action, Defendants maintained a practice and pattern of transmitting or causing to be transmitted dunning letters in the form of the Collection Communication to consumers such as Mr. Brussels to collect monies purportedly owed for credit cards issued by Chase Manhattan which demanded that the consumer pay attorney's fees in the amount of the Attorney Fee Claim.

16.  The Attorney Fee Claim does not represent the reasonable time spent by

Defendants in the preparation and transmission of the Collection Communication. Rather, the Defendants mass produced dunning letters such as the Collection Communication in such a manner as Defendants were able to collect or attempt to collect monies for "attorney's fees" which are not in fact incurred.

17. Paragraph 15 of the Brussels Cardholder Agreement provides:

> **15. COLLECTION FEE** We may refer your debt to an agency or attorney for collection if it is in default. <u>If proceedings are instituted for the collection of any amounts owing under this Agreement</u> by any attorney who is not a salaried employee of ours, we may charge, and you agree to pay, reasonable attorney's fees incurred in connection with such proceedings plus actual court and other collection costs.
>
> ("Attorney Fee Provision")

(underlined by Plaintiff).

18. At the time of the transmission of the Collection Communication by Defendants, no "proceeding" had been instituted for the collection of any amounts purportedly owed by Mr. Brussels.

19. In light of the Attorney Fee Provision in the Brussels Cardholder Agreement, Defendants had no legal right to assert the Attorney Fee Claim. Thus, the Attorney Fee Claim constituted an unlawful and impermissible attempt to collect monies from Mr. Brussels and other members of the class.

## V. DEFENDANT'S PRACTICES

20. It is or was the policy and practice of Defendants to send collection letters in the form of Exhibit "A" to consumers in a manner which was reasonably calculated to confuse or frustrate consumers with respect to advising consumers as to the right of consumers with respect to the validation of consumer debts under 15 U.S.C. §1692g.

21. It is or was the policy and practice of Defendants to send collection letters in the

form of Exhibit "A" to consumers wherein Defendants charged or attempted to charge for attorneys fees for which the Defendants were not entitled to recover from consumers such as Mr. Brussels.

## VI.   CLASS ACTION ALLEGATIONS

22.    This action is brought on behalf of a class consisting of (i) all persons with addresses in the state of Florida (ii) to whom letters the same form as Exhibit "A" were sent (iii) in an attempt to collect a debt which, according to the nature of the creditor or the debt, or the records of the creditor or defendants, was incurred for personal, family, or household purposes (iv) which arose under a credit card agreement the same or substantially similar to the Brussels Credit Card Agreement (v) which were not returned undelivered by the U.S. Post Office (vi) during the one year period prior to the filing of the complaint in this action.

23.    Plaintiff alleges on information and belief based on the Defendants' use of letters in the form of Exhibit "A" that the class is so numerous that joinder of all members is impractical. Based on Defendants' use of letters in the form of Exhibit "A," Plaintiff estimates that the class includes hundreds or thousands of class members.

24.    There are questions of law or fact common to the class, which common issues predominate over any issues involving only individual class members. The common factual issue common to each class member is that each was sent a letter in the form of Exhibit "A." The principal legal issues are whether Defendants' letters in the form of Exhibit "A" violate the FDCPA by (i) failing to properly inform the consumer with respect to the consumer's rights for debt verification in a manner which was not reasonably calculated to confuse or frustrate the least sophisticated consumer in violation of 15 U.S.C. §1692g, (ii) by committing a deceptive and unfair debt collection practice in violation of 15 U.S.C. §1692e, including making a false

representation of the services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt, and (iii) the use of unfair and unconscionable means to collect or attempt to collect a debt in contravention of 15 U.S.C. §1692f, including the collection of any amount, unless the amount is expressly authorized by the agreement creating the debt or permitted by law.

25. Mr. Brussels' claim is typical of those of the class members. All are based on the same facts and legal theories.

26. Mr. Brussels will fairly and adequately protect the interests of the class. He has retained counsel experienced in handling actions involving unlawful practices under the FDCPA and class actions. Neither Plaintiff nor his counsel have any interests which might cause them not to vigorously pursue this action.

27. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

(1) The questions of law or fact common to the members of the class predominate over any questions affecting an individual member.

(2) A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

28. Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate in that Defendants have acted on grounds generally applicable to the class thereby making appropriate declaratory relief with respect to the class as a whole.

29. Mr. Brussels requests certification of a hybrid class of Rule 23(b)(3) of the Federal Rules of Civil Procedure for monetary damages and Rule 23(b)(2) of the Federal Rules of Civil Procedure for equitable relief.

## VII. ALLEGATIONS OF LAW

30. At all times material hereto, Mr. Brussels was a "consumer" as said term is defined under 15 U.S.C. §1692a(3).

31. At all times material hereto, Chase Manhattan Bank was a "creditor(s)" as said term is defined under 15 U.S.C. §1692a(4).

32. At all times material hereto, the Credit Card Debts were "debts" as said term is defined under 15 U.S.C. §1692a(5).

33. At all times material hereto, Defendants were "debt collectors" as said term is defined under 15 U.S.C. §1692a(6).

34. 15 U.S.C. §1692g(a) provides, in pertinent part, the following:

Notice of Debts; Contents

> Within five days after the initial communication from the consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer written notice containing:
>
> (1) The amount of the debt;
>
> (2) The name of the creditor to whom the debt is owed;
>
> (3) A statement that unless the consumer, within thirty days after receiving the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) A statement that if the consumer notifies the debt collector in writing within the thirty day period, the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of the judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) A statement that upon the consumer's written request within

> the thirty day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

35. Defendants violated the requirements of 15 U.S.C. §1692g by failing to properly inform the consumer of his or her rights for debt verification in a manner which was not reasonably calculated to confuse or frustrate the least sophisticated consumer in contravention of 15 U.S.C. §1692g, including the following:

A. the failure to state the amount of the purported debt in a manner which was not confusing to the least sophisticated consumer in contravention of 15 U.S.C. §1692g(a)(1);

B. the failure to provide a statement that unless the consumer, within thirty (30) days **after receipt** of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector in contravention of 15 U.S.C. §1692g(a)(3); in particular, Defendants omitted the required language "after receipt" from the required disclosure;

C. the failure to include a statement that if the consumer notifies the debt collector **in writing** within thirty (30) days from receipt of the notice that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of the judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector in contravention of 15 U.S.C. §1692f(a)(4); in particular Defendants omitted the required language of "in writing within the thirty day period" from the required disclosure; and

D. the failure to include a statement that upon the consumer's written request within the thirty day period, the debt collector will provide the consumer the name and address of the original creditor, if different from the current creditor, in contravention of 15 U.S.C. §1692g(5); in particular, Defendants completely omitted any reference to the statutory time period for the

exercise of said right by the consumer.

36. Through the Collection Communication, Defendants violated the requirements of 15 U.S.C. §1692e(11) by failing to inform the consumer that the debt collector was attempting to collect a debt.

37. The conduct of Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C.§1692 e(2)(A) and (B) and e(10) through the use of false representations, deceptive or misleading representations or means to collect or attempt to collect a debt.

38. The conduct of Defendant violated 15 U.S.C.§1692f(1) through the use of unfair or unconscionable means to collect or attempt to collect a debt.

39. As a result of Defendants' conduct, Plaintiff and the class are entitled to an award of actual and statutory damages pursuant to 15 U.S.C. §1692k.

40. Plaintiff and the class are entitled to an award of costs and attorneys fees pursuant to 15 U.S.C. §1692k.

WHEREFORE, Plaintiff, Jay Brussels, an individual, requests judgment be entered in his favor and in favor of the class against Defendants, David E. Newman, P.A., a Florida professional association, doing business as "David E. Newman Attorneys at Law," and David E. Newman, an individual, for:

A. Declaratory judgment that Defendants' Exhibit "A" violates the Fair Debt Collection Practices Act;

B. Actual and statutory damages pursuant to 15 U.S.C. §1692k;

C. An award of costs and attorney's fees pursuant to 15 U.S.C. §1692k; and

D. Such other and further relief as the Court may deem just and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff, Jay Brussels, pursuant to Rule 38(b), Federal Rules of Civil Procedure, demands a trial by jury of all issues so triable.

Dated this 28th day of August, 2006.

Robert W. Murphy
Florida Bar No. 717223
1212 S.E. 2nd Avenue
Ft. Lauderdale, FL 33316
(954) 763-8660
(954) 763-8607 (FAX)



TOYS"R"US®

# Cardholder Agreement

**Important information to read and save**

(2/96)

**This is your Toys"R"Us Visa®/Visa Gold® Agreement. Please read it and keep it for your records. When you, the joint applicant, or another person authorized by you use your Account you have agreed to its terms.**

**1. USE OF TERMS** In this Agreement, the words "you", "your" and "yours" refer to each person who applied for a VISA/Visa Gold Account (called "Account") and to whom a VISA/Visa Gold Card (called "Card") is issued. The words "we", "us" and "our" refer to The Bank of New York (Delaware).

**2. YOUR RESPONSIBILITY**

**(A)** In order to use your Account you must sign your name on the signature panel on the back of the Card. You should sign your Card as soon as you receive it. Once you, or any authorized user, use the Card, this Agreement is accepted and will be in force

**(B)** You agree to pay us in United States Dollars for all Purchases and Advances obtained through use of the Card or the Account. You also agree to pay us for any Finance Charges, Late Charges and other charges which may be imposed by this Agreement. Everyone who uses the Card and each of you who applied for the Account are jointly and individually liable for the use of the Card and the Account.

**(C)** You may be liable for the unauthorized use of your Card. You will not be liable for unauthorized use that occurs after you notify us orally or in writing of the loss, theft, or possible unauthorized use at:

The Bank of New York (Delaware)
P.O. Box 6996, Newark, Delaware 19714 or call
(800) 845-1500 During Normal Banking Hours;
(800) 556-5678 After Banking Hours.

In any case, your liability will not exceed **$50**.

If you notify us immediately at the phone number or address above, your **$50** Liability Protection Plan will go into effect and you will not even be liable for the first **$50** of fraudulent misuse.

**3. ACCOUNT USE**

**(A)** Once you sign the Card, you may use it to make Purchases wherever the Card is honored, and to obtain Cash Advances from any bank that accepts the Card or, when the service is available, from any Automated Teller Machine that accepts the Card.

**(B)** You may not use the Account in excess of your credit limit. We may limit your Cash Advances to a portion of your credit limit. You agree not to make any Purchase or Cash Advance transaction that exceeds these limits. Subject to applicable law, we may change or cancel your credit limit and/or Cash Advance limit at any time without prior notice and without affecting your obligation to pay any amounts due under this Agreement.

**(C)** We are not responsible in any way for refusals to honor the Card or Cash Advance Checks or for Purchases obtained by use of the Card, except as provided by applicable laws and regulations. Cash refunds will not be made directly to you by the person honoring the Card. Instead, the person will issue a credit slip to you, subject to that person's refund policy and applicable law. This credit, if any, will appear on your Periodic Statement which is described below.

**(D)** Foreign Transactions - All transactions on your Account will be stated in U.S. dollars. If you incur a charge to your Account in a foreign currency (for example, by using your Account overseas), it will be converted to U.S. dollars at the conversion rate established by VISA International. Currently, the currency conversion rate used to determine the transaction amount in U.S. dollars is, in most cases, either (i) the wholesale market rate or (ii) a government-mandated rate, in effect one day prior to the processing date, increased by one percent. The currency conversion rate used on the processing date may differ from the rate that would have been used on the purchase date or Periodic Statement posting date. Charges already converted to U.S. dollars by common carriers and others will be posted to your Account at the conversion rates they use.

**(E)** Joint Accounts - If more than one person signed the initial application for this Account, all of you are bound by this Agreement upon use by any of you. Each of you is responsible for payment of all amounts owed under this Agreement, regardless of any divorce or other legal proceeding or any agreement that may affect liability between you. If any of you gives us notice disclaiming liability for amounts owed under this Agreement, we may close the Account. In that event, and to the extent your Account is not in default at any time, you will be permitted to pay the outstanding balance under the same terms as if your Account were open. You will not, of course, be permitted to incur any new charges on the Account.

**(F)** We may request or use consumer credit reports in connection with any extension, update or renewal of credit to you, or if your Account is in default. We may also conduct a credit review of your Account at any time and at our discretion. Based upon our review of such consumer credit report(s) and/or your Account, and subject to applicable law, we may increase or decrease your credit limit and/or close your Account without prior notice to you. In addition, we may exchange with others credit information about you in connection with any credit we extend to you.

**4. CASH ADVANCE CHECK** You will receive a supply of VISA/VISA Gold Cash Advance Checks (hereafter referred to as CHECK-N-CHARGE℠) with your name imprinted on them. Whenever you draw a CHECK-N-CHARGE check it will be deemed an order for a single loan and your Account will be charged in the amount of the check on the date it is posted to your Account. You agree to notify us promptly of any CHECK-N-CHARGE checks which have been lost or stolen and of the circumstances surrounding the loss or theft at The Bank of New York (Delaware), P.O. Box 6999, Newark, Delaware 19714 or call (800) 442-3142. CHECK-N-CHARGE checks are for use in obtaining credit under the terms of this Agreement.

We have the right to revoke CHECK-N-CHARGE checks at any time. You agree to cease using them at our request.

**EXHIBIT "A"**

You may not use CHECK-N-CHARGE checks to pay any outstanding balance you owe under this Agreement.

CHECK-N-CHARGE checks paid by us will not be returned to you with your Periodic Statement, but will be identified on it.

We will not certify CHECK-N-CHARGE checks.

We are not obligated to pay a CHECK-N-CHARGE check if, for instance:

**(A)** Your credit limit has been exceeded or would be exceeded by this transaction.

**(B)** You have failed to pay amounts owed to us when due or have failed to follow any of the terms of this Agreement.

**(C)** You have notified us or we have determined that the Card or your CHECK-N-CHARGE checks have or may have been lost or stolen, or that there may be unauthorized access to your Ac··unt.

( )ur Account has been closed for any reason.

**(E)** Your rights under this Agreement have expired or have been revoked.

**5. PERIODIC STATEMENT** We will promptly send you (the Applicant) on behalf of all Cardholders a statement at the end of each Billing Period. We will list the following data:

**(A)** The Previous Balance.

**(B)** Any Payments received by us during the Billing Period.

**(C)** Other Credits and Debits to your Account which were received by us during the Billing Period.

**(D)** All your Purchases and Advances received by us during the Billing Period.

**(E)** The Balance Subject to Finance Charge.

**(F)** Finance Charges, Late Charges and other charges if any.

**(G)** The New Balance.

**(H)** The Minimum Payment Due.

**(I)** The Payment Due Date.

**You will not receive a statement if there is no balance outstanding on your Account and there was no activity on the Account during the Billing Period.**

**6. FINANCE CHARGES** Finance Charges begin to accrue on the tr···action date of each Purchase or on your last Billing Date, w· ever is most recent. However, you can avoid additional Finance Charges on Purchases if you pay your New Balance in full on or before the Payment Due Date. In addition, there is no Finance Charge on Purchases for any Billing Period if you start the Billing Period with a zero total Previous Balance.

Finance Charges on Advances begin to accrue on the date of each Advance or your last Billing Date, whichever is most recent, and continue to accrue each day until we receive payment of the New Balance in full. There will be a minimum Finance Charge of $.50 if a Finance Charge for Purchases or Cash Advances is imposed.

Any Finance Charge which accrues on your Account after the closing date will appear on the next statement.

**7. COMPUTING FINANCE CHARGES** for VISA/VISA GOLD PURCHASES/CASH ADVANCES. In any Billing Period in which you are subject to Finance Charges, we figure Finance Charges on your average daily balance:

**(A)** We start with the Purchases and Advances Previous Balances at the beginning of the Billing Period.

**(B)** We add Purchases, Advances, and other Debits, and we subtract Payments and Other Credits, both additions and subtractions as of the date of the transaction or as of your last Billing Date, whichever is more recent, giving us the daily balance (except that Late Charges, Overlimit Charges and credit life insurance premiums are not included in the average daily balance calculations until the day after they are posted to your Account).

**(C)** Then we add the daily balances outstanding for each day in the period and divide by the number of days in the period.

**(D)** The result is your average daily balance which is shown on your Periodic Statement as BALANCE SUBJECT TO FINANCE CHARGE.

We multiply the average daily balance by the Monthly Periodic Rate, which is explained below.

We also add an additional Finance Charge for each cash advance transaction and each CHECK-N-CHARGE check written. The additional cash advance transaction fee **FINANCE CHARGE** will be 2% of the amount of the Advance or $2.50, whichever is greater, up to a maximum fee of $25.00 per Advance. These fees will be reflected on your Periodic Statement as FINANCE CHARGES. These additional Finance Charges may cause the Annual Percentage Rate on the statement on which the transaction(s) first appear(s) to exceed the rate stated below.

**8. VARIABLE RATE** The Periodic Rate applied to your Account will be determined as follows:

The **ANNUAL PERCENTAGE RATE** applied to the Purchases average daily balance on your Account will be 990 basis points (9.9%) above the Prime Rate published in *The Wall Street Journal* the last business day of the previous month.

The **ANNUAL PERCENTAGE RATE** applied to the Advances average daily balance on your Account will be 1090 basis points (10.9%) above the Prime Rate published in *The Wall Street Journal* the last business day of the previous month.

If more than one rate is published, we will use the highest of the published rates. If you become in default of this Agreement (for instance, if you make a payment after the payment is due), then we may immediately increase the variable ANNUAL PERCENTAGE RATE (including any Promotional or Introductory Rate) applied to the Purchases average daily balance on your Account, including any outstanding balance and all new transactions, to a rate of 1290 basis points (12.9%) above the Prime Rate. We may also immediately increase the variable ANNUAL PERCENTAGE RATE (including any Promotional or Introductory Rate) applied to the Cash Advances average daily balance on your account, including any outstanding balance and all new transactions, to a rate of 1390 basis points (13.9%) above the Prime Rate. We reserve the right to immediately close your Account if it is in default of this Agreement.

You may again qualify for the lower variable ANNUAL PERCENTAGE RATE on new purchases and cash advances once your Account has been in good standing (not in default) for six consecutive months. The Annual Percentage Rates will be divided by 12 and rounded to the nearest one-thousandth of a percent (.001%) giving us the Monthly Periodic Rates which, when multiplied by 12, will equal the Nominal ANNUAL PERCENTAGE RATES. Rate changes (if any) will take place on the 15th of each month, or if the 15th is not a business day then on the next business day, and will apply to your Account and any outstanding balances as of the first day of the first billing cycle that ends on or after such rate change, and any balances you incur thereafter. Please refer to your credit card carrier for the current Annual Percentage Rates as of the date your Card was issued.

If the Prime Rate increases, the Nominal ANNUAL PERCENTAGE RATES on your Account may increase. Any increase may result in higher Minimum Payment Due amounts. The term "Prime Rate" is used in *The Wall Street Journal* to mean "the base rate on corporate loans at large U.S. money center commercial banks." It is not intended to mean that such rate is the best or lowest borrowing rate available. None of the periodic rates applicable to your Account will exceed the maximum periodic rate permitted under Delaware law. Delaware law does not limit the rate of interest that may be charged.

**9. CHANGE OF INDEX** We reserve the right to change at any time the index, and/or the amount to be added to the index, used to determine the Annual Percentage Rates on your Account.

**10. PAYMENTS**

**(A) MINIMUM PAYMENT DUE** You may pay your debt in full at any time without incurring additional charges for prepayment. If you do not wish to pay the total New Balance outstanding for both Purchases and Advances by the Payment Due Date you must pay at least the total Minimum Payment Due by the Payment Due Date in order to avoid being in default. The total Minimum Payment Due will be:

(1) Any amount past due, plus, (2) The greater of the amount of:

(a) **1/36th** for credit lines less than $5,000 and **1/60th** for credit lines of $5,000 or more, of the total New Balance (including Finance Charges) outstanding as of your last Periodic Statement, rounded to the next whole dollar; or

(b) **$10.** If the total New Balance is less than **$10**, the total Minimum Payment Due will be such lesser amount.

**(B) METHOD OF PAYMENT** All payments must be made in U.S. dollars. Payment should be made in the form of check or other negotiable instrument payable to The Bank of New York (Delaware). Payment made through the mail in the form of cash or third party checks may not be accepted and all checks or negotiable instruments must be payable at a domestic bank or at a domestic office of a foreign bank.

**(C) APPLICATION OF PAYMENTS** In accordance with applicable law, we will choose the order in which any payment will be applied to your indebtedness to us at the time the payment is made.

Any payment you make in excess of any Minimum Payment Due will not affect your obligation to make future Minimum Payments Due, calculated in accordance with this Agreement, while any balances are outstanding.

**(D) I**
tial p
any
may
men
your
or b
suar
after
of th
or c
and/
acce
this
**(E) S**
Acc
Req
auth
requ
Stat
duri
**11. I**
Due
ble t
**$18.**
is o
**12.**
**(A) (**
for a
your
**(B) F**
for a
**(C) I**
payr
and
**(D) I**
we r
your
**(E) T**
impo
Acc
depe
**(F) V**
payn
The
Acc
We r
as w
vidin
requ
**13. I**
any
Peri

secutive months. The Annual Percentage Rates will be divided by 12 and rounded to the nearest one-thousandth of a percent (.001%) giving us the Monthly Periodic Rates which, when multiplied by 12, will equal the Nominal ANNUAL PERCENTAGE RATES. Rate changes (if any) will take place on the 15th of each month, or if the 15th is not a business day then on the next business day, and will apply to your Account and any outstanding balances as of the first day of the first billing cycle that ends on or after such rate change, and any balances you incur thereafter. Please refer to your credit card carrier for the current Annual Percentage Rates as of the date your Card was issued.

If the Prime Rate increases, the Nominal ANNUAL PERCENTAGE RATES on your Account may increase. Any increase may result in higher Minimum Payment Due amounts. The term "Prime Rate" is used in *The Wall Street Journal* to mean "the base rate on corporate loans at large U.S. money center commercial banks." It is not intended to mean that such rate is the best or lowest borrowing rate available. None of the periodic rates applicable to your Account will exceed the maximum periodic rate permitted under Delaware law. Delaware law does not limit the rate of interest that may be charged.

**9. CHANGE OF INDEX** We reserve the right to change at any time the index, and/or the amount to be added to the index, used to determine the Annual Percentage Rates on your Account.

**10. PAYMENTS**

**(A) MINIMUM PAYMENT DUE** You may pay your debt in full at any time without incurring additional charges for prepayment. If you do not wish to pay the total New Balance outstanding for both Purchases and Advances by the Payment Due Date you must pay at least the total Minimum Payment Due by the Payment Due Date in order to avoid being in default. The total Minimum Payment Due will be:

(1) Any amount past due, plus, (2) The greater of the amount of:
(a) **1/36th** for credit lines less than $5,000 and **1/60th** for credit lines of $5,000 or more, of the total New Balance (including Finance Charges) outstanding as of your last Periodic Statement, rounded to the next whole dollar; or
(b) **$10.** If the total New Balance is less than **$10**, the total Minimum Payment Due will be such lesser amount.

**(B) METHOD OF PAYMENT** All payments must be made in U.S. dollars. Payment should be made in the form of check or other negotiable instrument payable to The Bank of New York (Delaware). Payment made through the mail in the form of cash or third party checks may not be accepted and all checks or negotiable instruments must be payable at a domestic bank or at a domestic office of a foreign bank.

**(C) APPLICATION OF PAYMENTS** In accordance with applicable law, we will choose the order in which any payment will be applied to your indebtedness to us at the time the payment is made.

Any payment you make in excess of any Minimum Payment Due will not affect your obligation to make future Minimum Payments Due, calculated in accordance with this Agreement, while any balances are outstanding.

**(D) IRREGULAR PAYMENTS** You agree that we may accept partial payments of amounts due or late payments without losing any of our rights under this Agreement. You also agree that we may accept or reject checks and money orders (i) marked "payment in full" or otherwise purporting to be in full satisfaction of your outstanding balance, (ii) with restrictive endorsements, front or back, of any kind, or (iii) sent to us accompanied by or pursuant to correspondence or other form of notification which attempts to qualify, alter or restrict the conditions of negotiability of the check or money order or which attempts to alter the terms or conditions of this Agreement or restrict or alter our rights and/or remedies under this Agreement or under law, without accepting any such condition or losing any of our rights under this Agreement or under law.

**(E) SKIP PAYMENT OPTION** To qualify for skip payment, your Account must be open and not in default. You may skip the Required Minimum Payment for the month of January. During the authorized skip payment month, no minimum payment will be required. This will be indicated on the appropriate Periodic Statement. However, Finance Charges will continue to accrue as during non-skip payment months.

**11. LATE CHARGES** If you do not make a Minimum Payment Due when it becomes due, we may assess and you are responsible to pay, in addition to any Finance Charge, a Late Charge of **$18**. We will charge you a Late Charge for each payment that is overdue.

**12. OTHER CHARGES**

**(A)** Overlimit Charge. We will charge you **$18** on your Billing Date for any Billing Period in which your Account is more than **$1** over your credit limit.

**(B)** Returned CHECK-N-CHARGE Checks. We will charge you **$18** for any CHECK-N-CHARGE check which we return unpaid.

**(C)** Returned Payment Check. We will charge you **$18** for any payment check received on your Account which is dishonored and returned to us.

**(D)** Reinstatement Fee. We may charge you a **$20** fee whenever we reopen a closed Account, whether the Account was closed at your request or because of default as defined in this Agreement.

**(E)** Transaction Charges-Automated Teller Machines. We may impose a charge for each transaction which you make on your Account at an Automated Teller Machine. Such charges may vary depending upon the cost of the transaction to us.

**(F)** We will charge you **$7.50** any time you request that we stop payment on a CHECK-N-CHARGE check.

The above charges, and any Late Charge, will be charged to your Account as a Purchase.

We reserve the right to charge a Service Charge in such amount as we determine, based upon our own reproduction cost, for providing additional documentation to you in response to your request, providing that such request is not a billing error inquiry.

**13. CREDIT BALANCES** We will automatically debit and absorb any credit balance of less than **$1** which remains unused on your Periodic Statement for more than one monthly statement period.

**14. DEFAULT** We may consider your Account to be in default and may terminate your authorization to use the Card and Account if any of the following events occur:

**(A)** a Minimum Payment Due is not made when due;
**(B)** you die or become the subject of an insolvency, incompetency or bankruptcy proceeding;
**(C)** the credit available for your use is exceeded;
**(D)** there has been a material misstatement or misrepresentation to us in connection with this Agreement;
**(E)** any term or condition of this Agreement is breached by you;
**(F)** any obligation or indebtedness owed to us or to anyone else becomes delinquent; or
**(G)** any payment check received on your Account is dishonored and returned to us or we return unpaid any CHECK-N-CHARGE check.

If we declare your Account to be in default, subject to applicable law, you agree that all amounts owing to us shall, at our option, become immediately due and payable upon demand without prior notice.

**15. COLLECTION FEE** We may refer your debt to an agency or attorney for collection if it is in default. If proceedings are instituted for the collection of any amounts owing under this Agreement by any attorney who is not a salaried employee of ours, we may charge, and you agree to pay, reasonable attorney's fees incurred in connection with such proceedings plus actual court and other collection costs.

**16. TERMINATION** You may at any time pay all sums due us under this Agreement, return the Card to us, and terminate this Agreement. We may cancel the Account and this Agreement if your Account is in default or at any time at our discretion without prior notice to you. If we ask, you must cease using you card(s) and cut them in half. If the Account or this Agreement is cancelled by either you or us, we will continue to retain all rights under this Agreement.

**17. DELAY IN ENFORCEMENT** We can delay enforcement of any of our rights under this Agreement without losing such rights.

**18. AMENDMENT OR MODIFICATION** We reserve the right to amend or modify the provisions of this Agreement at any time by mailing or delivering to you (the Applicant) on behalf of all Cardholders a copy of such amendment or modification. Subject to Delaware law, any such amendment or modification may apply to, and affect, your Account, any outstanding balances, and any balances you incur in the future as of the first day of the first billing cycle that ends on or after the effective date of such amendment or modification (or such other time that we give you notice of in such amendment or modification). This Agreement modifies, amends and supersedes all previous Toys"R"Us VISA/VISA Gold agreements between you and us, if any, which pertain to this Account.

**19. SEVERABILITY OF PROVISIONS** The fact that any provision of this Agreement may prove invalid or unenforceable under any law, rule or regulation of any governmental agency, federal, state or local, shall not affect the validity or enforcement of any other provision of this Agreement.

**20. GOVERNING LAW** This Agreement and all matters arising out of the issuance or use of the Card or the Account shall be governed by, and construed in accordance with, the laws of the State of Delaware, except in those instances where Federal law is applicable.

**21. ADDRESSES** Your full name, address and signature on the application are considered part of this Agreement. Our address is: The Bank of New York (Delaware), P.O. Box 6999, Newark, DE 19714.

**Maryland Residents:** You have the right under Md. Com. Law Code Ann §12-510 to receive an answer to any written inquiry concerning the status of your account. Finance charges will be imposed in amounts or at rates not in excess of those permitted by law.

**[illegible]ed Wisconsin Residents - Notice To Non-Applicant S[illegible]se:** Credit extended to your spouse under this Agreement may result in a marriage or family obligation. This Agreement states the terms under which such credit for marriage or family purposes may be extended to your spouse.

**YOUR BILLING RIGHTS** This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us in Case of Errors or Questions About Your Bill**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write to us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

**Y[illegible] Rights and Our Responsibilities After We Receive Your W[illegible]en Notice**

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to the questioned amount. If we did not make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about the bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we do not follow these rules, we cannot collect the first **$50** of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases**

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services.

There are two limitations on this right:

a. You must have made the purchase in your home state or, if not within your home state within 100 miles of your current mailing address; and

b. The purchase price must have been more than **$50**.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

VISA is a registered service mark of VISA International. Use authorized under license. CHECK-N-CHARGE is a service mark of The Bank of New York (Delaware).

Toys"R"Us is a registered trademark of Geoffrey, Inc.

**For Customer Service inquiries call: (800) 442-3142**

To help us serve you promptly, please include the posting and transaction dates, and the reference number of the item in question.

**X-1250**

Member FDIC    AN EQUAL OPPORTUNITY LENDER    2-FDR-0202 (2/96)

TOYS"R"US®

THE BANK OF NEW YORK (DELAWARE)

# Cardholder Agreement

**Important information to read and save**

# TOYS"R"US VISA®

## This is an ADDENDUM to your Toys"R"Us Visa/Visa Gold Cardholder Agreement - Please keep for your records

The Current Monthly Periodic Rates and Annual Percentage Rates which apply to your Account are as follows:

- **New Accounts and Accounts less than six (6) months old:**

  The current variable introductory Monthly Periodic Rate which applies to your Account for the first six (6) monthly billing periods after the Account open date is .804% (corresponding to a variable **Annual Percentage Rate** of 9.65%). The Annual Percentage Rate is calculated by adding 1.4% (140 basis points) to the highest Prime Rate published in The Wall Street Journal the last business day of the previous month, and may vary in accordance with Paragraph 8 of your Cardholder Agreement.

- **Rates that otherwise apply and Accounts more than six (6) months old:**

  The Monthly variable Periodic Rate that would have been applied to your Account, and which applies to all Accounts after the first six (6) billing periods from the Account open date, is currently 1.513% for Purchases (corresponding to a variable **Annual Percentage Rate** of 18.156%) and 1.596% for Cash Advances (corresponding to a variable **Annual Percentage Rate** of 19.152%). Rates may vary; please refer to Paragraph 8 of your Cardholder Agreement.

**X-1376**

2-FDR-0132
(5/96)

Suite 225
1533 Sunset Drive
Coral Gables, Florida 33143
Telephone: 305-665-9633
Facsimile: 305-666-9714

**David E. Newman**
Attorneys At Law

Professional Association

David E. Newman
Amy J. Winarsky
Jennifer A. Margolis

08/30/2005

JAY BRUSSELS
6226 NW 84TH TER
PARKLAND, FL 33067

19914245101

CLIENT : NATIONAL REVENUE SERVICE, INC./4253330209347548
REFERENCE: 03/31/2005CH2
BALANCE : $2,173.87

Dear JAY BRUSSELS:

Please be advised that the undersigned is legal counsel for the above-named party.

The above referenced account is a **CHASE MANHATTAN BANK** Mastercard or Visa credit card account that has been assigned to National Revenue Service. We have been advised that your account is outstanding and past due. Therefore, demand is hereby made for payment in full. Attorney fees of $400.00 are included in the above amount. Make your check payable to DAVID E. NEWMAN TRUST ACCOUNT. Your check should be mailed or delivered to our office at the above address.

If you dispute the debt in whole or part within 30 days of receipt of this letter, we will mail verification of the debt to you. Upon your written request, we will provide you with the name and address of the original creditor - should it be different from the one referenced above. If you do not dispute the debt or any part of it within 30 days, we will assume it is valid. Any information obtained from you will be used for the purpose of collecting the above referenced debt. *If you are in the military service, please advise immediately.*

Please be aware that in the event of suit you may be held liable for money damages plus interest, court costs, and attorney fees. If a Judgment is entered against you, the Judgment would be recorded in the Public Records. In addition, further action including depositions and/or other Court proceedings, may be required. There may be a negative impact on your credit rating. PLEASE BE GOVERNED ACCORDINGLY!

Very truly yours,

***David E. Newman*** (reviewed and approved)

DAVID E. NEWMAN, P.A.

DEN/DEN
Noticia Importante:
Si usted no habla ingles, favor de comunicarse con la oficina lo antes possible. (305)666-5532
**You may pay your account or contact us at our website:** www.DavidENewmanPA.com

EXHIBIT "B"

JS 44 (Rev. 11/05)

# CIVIL COVER SHEET

MAGISTRATE JUDGE SNOW

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

**I. (a) PLAINTIFFS**

Jay Brussels, an individual, o/b/o himself and all other similarly situated

**DEFENDANTS**

David E. Newman, P.A., a Florida professional association, and David E. Newman, an individual

**(b)** County of Residence of First Listed Plaintiff: Broward
(EXCEPT IN U.S. PLAINTIFF CASES)

CIV-COHN

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Robert W. Murphy, Esquire
1212 SE 2nd Avenue, Ft. Lauderdale, FL 33316
Telephone: (954) 763-8660

**06-61325**

Attorneys (If Known)

**(d)** Check County Where Action Arose: ☐ MIAMI-DADE ☐ MONROE ☑ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☑ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

0:06 CV 61325-Cohn-LSS

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence

Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☒ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)

☑ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Re-filed- (see VI below) ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. RELATED/RE-FILED CASE(S).** (See instructions second page):

a) Re-filed Case ☐ YES ☑ NO b) Related Cases ☐ YES ☑ NO

JUDGE DOCKET NUMBER

**VII. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause **(Do not cite jurisdictional statutes unless diversity)**:

Violation of 15 U.S.C. §1692, et sequi (Fair Debt Collection Practices Act)

LENGTH OF TRIAL via 2 days estimated (for both sides to try entire case)

**VIII. REQUESTED IN COMPLAINT:**

☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☑ Yes ☐ No

**ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE**

SIGNATURE OF ATTORNEY OF RECORD

DATE 8/28/06

FOR OFFICE USE ONLY

AMOUNT 350 RECEIPT # 538023 IFP